IN THE UNITED STATES DISTRICT COURT

DISTRICT OF CONNETICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br>(Respondent) | )<br>)<br>) |
| vs. | ) Case No.:<u>3:02cr 185(DJS)</u><br>)<br>) |
| LONDON TROY JOHNSON<br>(Petitioner) | )<br>) |

MOTION TO REDUCE SENTENCE PURSUANT 18 USC § 3582(c)(2)

Now comes, Petitioner, London Troy Johnson, Pro Se, before this court seeking the reduction of his sentence in accordance to 18 USC § 3582(c)(2). He asks that this court give retroactive effect to Amendment 9 under U.S.S.G. § 1B1.10 and reduce his sentence from 100 months, minus two level reduction. Petitioner seeks a reduction based, inter alia, upon the United States Sentencing Commission consistently held position that the 100:1 ratio between sentences for cocaine powder and crack cocaine offense produce a disparate impact on black defendants. This racial disparity between sentences imposed for equivalent amounts of powder versus crack cocaine is now a source of great concern in the Congress and the Community as well. The 100:1 ratio has been sharply criticized by judges, scholars, former United States Attorneys, law enforcement officials and former Presidents, (Both Presidents Clinton (*Fn1) and current President Bush have

---

*Fn1 In July of 1997 the Clinton administration publicly supported a proposal to reduce the ratio to 10:1

(1)

expressed their concerns regarding the 100:1 ratio).

It is well known that the 100:1 ratio came under heavy criticism from the start and it now has ballooned to epic proportions, the Sentencing Commission has studied the issue in depth and concluded that the 100:1 ratio cannot be justified. (see: U.S. v. Petersen, 143 F.S2d 569, 577)(E.D. Va. 2001)(noting that a unanimous Sentencing Commission agreed that the 100:1 ratio could not be justified). Likewise, a House recognized "that the current 100-to-1 quantity ratio may not be the appropriate ratio."(Id. citing H.Rep. No. 104-272 at 4(1995) reprinted in 1995 U.S.C.C.A.N. 335, 337). There is no doubt that the 100:1 ratio has been sharply criticized by the Executive Branch, Judicial Branch and Legislative Branch including the Sentencing Commission itself. However, ever since the implementation of the 100:1 ratio, the unjustifiable harsh crack penalties continue to have a disparate impact on black defendants. This is contrary to one of the Sentencing Reform Act's (SRA) primary goals of eliminating unwarranted disparity between similar situated defendants. While there may be no indication that the Congress's purpose in passing the law was to punish blacks more severely, the impact that the law had on blacks has been discriminatory and this is a reality nonetheless.

Before the Guidelines were implemented, the average sentence for a white federal defendant was 51 months while the average sentence for a black federal defendant was 55 months. After the Guidelines, however, the average sentence for whites dropped

to 50 months, but the average sentence increased to 71 months for blacks.(see: "Beyond the 100:1 Ratio: Towards a Rational Cocaine Sentencing Policy. 38 Arizona Law Review 1233, 1249) (William Spade Jr. 1996) Most recently, the Commission recommended that the disparity be reduced in it's 2002 proposal and now they have acted on that proposal which they recommended the threshold for the 5 and 10 year mandatory minimum penalties be increased from 5 and 50 grams to 25 and 250 grams. In the current amendment, the Sentencing Commission has lowered the previous guideline level for crack cocaine offense by 2 levels.

Based on the foregoing reasons and because of the Sentencing Commission's acquired expertise in this area this Court should strongly consider the findings of the Commission and reduce Petitioner's guideline level accordingly.(see:18 USC § 3553(a)(5) & (a)(6)).

In the instant case, Petitioner pleaded guilty to Possession with Intent to Distribute more than 5 Grams of Cocaine Base, in violation of 21 U.S.C. 841(a)(1) & 841 (b)(1)(iii), on December 12, 2003.(see: Docket No.: 3:02cr 185(DJS)) He was sentenced to 100 months in prison, (Id) by the Honorable Dominic J. Squatrito, United States District Judge.

Section 3582(c)(2) allows a court to reduce the term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been lowered by the Sentencing Commission..."(Id). This statute enables a defendant to benefit from amendment to the guidelines that are enacted after he/she is sentenced. If the amendment

would have lowered the defendant's initial sentencing range, he/she may ask the court to resentence him/her accordingly. The law permits, but does not require, the court to resentence a defendant.(U.S. v. Vazquez, 53 F.3d 1216, 1227-28 (11th Cir. 1995)). When a sentencing guideline is amended and given retroactive effect, the District Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," may reduce a previous sentence under the amendment "if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The District Court makes two determinations in deciding whether or not to modify a sentence under section 3582(c)(2). Under the first step, the sentencing court considers what sentence it would have imposed had the retroactive amendment been in effect at the time the defendant was sentenced.(see: U.S.S.G. § 1B1.10(b)). The commentary accompanying U.S.S.G. § 1B1.10(b) instructs the court that "in determining the amended guideline range under subsect (b), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected." (see: Id n.2) Accordingly, the District Court should determine the guideline range that would have applied in this case had Amendment 9 been in effect ab initio.

Second, in light of the conclusion reached in first step, the court must consider the factors listed in § 3553(a) and

determine whether or not to reduce Petitioner's sentence.

Based upon all the aforementioned reasons and the circumstances of this case Petitioner respectfully requests that this Honorable Court amend his term of imprisonment to reflect the sentencing guideline modification set forth in Amendment 9 and bring his sentence within the amended guideline structure.

dated: 2/13/08

Respectfully Submitted,

London Troy Johnson, Pro Se

AFFIDAVIT AND CERTIFICATE OF SERVICE

I, do hereby certify, under penalty of perjury of the laws of the United States of America pursuant to Title 28 U.S.C. § 1746 and Title 18 § 1621, that a true and accurate copy of the enclosed document has been mailed to the clerk of the courts for the service on the United States Attorney's office consistent with the Court's Rules for Electronic Filing; as I am incarcerated at Elkton F.C.I. and I do not have the address to serve the AUSA office in this district. Nor is that address provided by prison officials, here at Elkton via the Law Library.

Notice will be sent by operation of the Court's CM/ECF system to all parties on the electronic filing receipt. Parties may access this filing through the Court's system. Service by electronic mail constitutes service pursuant to FED.R.CIV.P. 5(b)(2)(D). Specifically, notice will be sent to the following Parties:

United States Attorney's Office
District of Conneticut

dated: 2/13/08                          Respectfully Submitted,

*London Johnson* (signature)            London Troy Johnson

A. Booker Authority

A Sentencing Court's authority to re-open and, if appropriate, reduce a sentence under 3582(c)(2) is <u>triggered</u> when the sentence was "based on sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to" its power to review and revise . . . the guidelines. "The Crack" amendment clearly fits within that description. Effective Nov. 1, 2007, the Commission lowered sentencing ranges for crack offense by two offense levels because it found that the crack guidelines <u>over-punished</u> crack offenders and created unwarranted disparity between crack offenders and other offenders with offenses. On Nov. 11, 2007 the Commission voted to make that amended guide-lines retroactive. Nothing more is needed to trigger the courts authority to revisit a sentence under 3582(c)(2) once the authority to revisit the sentence has been triggered, the court still needs to ensure that the new sentence is consistent with the 3553(A) factors and the Commission's policy statement see 18 U.S.C. 3582(c)(2). <u>But those policy statements, including any suggestion that retroactivity be delayed until March 3, 2008 must be read as advisory after Booker.</u> See, <u>United States v. Hicks 42 F.3d 1167, 1170 9th Cir. 2007.</u> Because a mandatory system is no longer an open choice, District Courts are neces-sarily endowed with the discretion to depart from the guidelines,

when issuing new sentences under 3582(c)(2) citing <u>Booker v. United States</u> 543 U.S. 220, 263 (2005) <u>United States v. Jones</u> 2007 WL 2703122 (D. Kansas Sept. 17 (2007). The court is thus free to reject the Commission's "advise" about when to act on a 3582(c)(2) motion if the court finds that earlier action is appropriate under 3553(a).

Delaying until March 3, 2008 the release of a defendant who would otherwise be released earlier is inconsistent with 3553(A) which requires sentencing courts to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing, and thus is contrary to 3582(c)(2)'s requirement to consider the applicable 3553(a) factors. In contrast, the Commission's advise that courts delay the effective date of retroactivity until March 3, 2008 was not based on any finding regarding the purposes of sentencing, or any other 3553(a) factor, but rather was "in order to give courts sufficient time to prepare for and process cases." <u>While administration ease is a laudable goal</u>, it cannot trump the statutory requirement to impose a sentence that is sufficient but greater than necessary to satisfy sentencing purposes.

Guideline manuals that interprets or explains a guideline is authoritative <u>unless it violates the Constitution</u>(emphasis added); see U.S. v. Hicks 472 F.3d at 1172-73 ("to the extent that policy statements are inconsistent with <u>Booker</u> by requiring that the guidelines be treated as mandatory, the policy statement must give way"). After <u>Booker, Gall</u> and <u>Kimbrough</u>, this means

that any statements on how courts should retroactively apply the Crack Amendment including any date limitation, must be treated as merely advisory, and the sentencing court must have the discretion to reject that advise.  see, Booker 543 U.S. at 265

Regardless of whether 3582(c)(2) re-sentencing constitute full "de novo" sentencing they clearly require the court to impose a sentence based upon its evaluation of the 3553(A) factors, a process that cannot be circumscribed by a policy statement. Importantly, crack defendants are not seeking an extension of a Supreme Court decision.  Rather, they are seeking to be sentenced under 3553(A) as required by Sumpreme Court Law.  see, Neal v. United States 516 U.S. 284,290-295 (1996) Commission does have authority to amend a statute "by purporting to interpret it in ways contrary to the construction given it by the Supreme Court, and the Court will" reject (the Commission's) alleged contrary interpretation.

In short, whether or not 3582(c)(2) re-sentencing constitute a full resentencing, equitable proceedings, or something in between, the District Court must still treat a Commission policy statement as advisory or it violates Booker.  So to, if 1B1.10 is itself advisory so too is its "advise" that District Courts wait until March 3, 2008 to reduce a defendant's sentence under 3582(c)(2).

date 2/13/08                                    Respectfully Submitted,

*London Johnson* (signature)

                                                London Troy Johnson

- 3 -